304 So.2d 433 (1973)
INTERLACHEN LAKES ESTATES, INC., and Norservice, Inc., Florida Corporation, Plaintiffs,
v.
Clinton R. SNYDER, Jr., As Tax Assessor of Putnam County, Florida, Defendant.
No. 43311.
Supreme Court of Florida.
September 12, 1973.
On Rehearing December 9, 1974.
Edward E. Hedstrom, of Dowda, Hedstrom & Fields, Palatka, for plaintiff.
Kate L. Walton, Palatka, for defendant.
ERVIN, Justice.
Pursuant to Florida Appellate Rule 4.6, 32 F.S.A., the Honorable W.L. Wadsworth, Judge of the Circuit Court of Putnam County, has certified to this Court the following questions:
"QUESTION I: Whether valuation of lands which have been subdivided into lots by a duly recorded plat and which remain unsold by the original subdivider by the tax assessor for tax assessment purposes on the same basis as any unplatted acreage of similar character until sixty percent of such lands included in one plat shall have been sold as individual lots violates the provision of Section 2 of Article VII of the Florida Constitution of 1968 requiring that all ad valorem taxation shall be at a uniform rate within each taxing unit (except taxes on intangible personal property).
"QUESTION II: Whether such valuation for tax assessment purposes violates the provision of Section 4 of Article VII requiring that by general law regulations shall be prescribed which shall secure a *434 just valuation of all property for ad valorem taxation (except agricultural or recreational lands and except tangible personal property held for sale as stock in trade and livestock).
"QUESTION III: If the foregoing questions are answered in the negative whether the tax assessor in assessing the unsold lots on the same basis as unplatted acreage of similar character may consider any or all of the following improvements as affecting valuation of the unsold area, to-wit:
"1. Survey and platting of area.
"2. Clearing, grading or paving of roads in the area.
"3. Availability of utilities to the unsold lots.
"4. Advertising and promotional costs.
"5. Qualification with the Florida Land Sales Board."
QUESTIONS I and II relate to the constitutionality of Florida Stat. § 195.062(1), F.S.A., which reads in part:
"... [The tax assessor's manual of instructions] shall provide that platted lands unsold as lots shall be valued for tax assessment purposes on the same basis as any unplatted acreage of similar character until 60 per cent of such lands included in one plat shall have been sold as individual lots."
We need only specifically to answer one of the three questions, and that is Number II. Since we answer this question affirmatively, Number III is irrelevant. Since we hold that § 195.062(1) violates the constitutional provision requiring just valuation of all property for ad valorem taxation, we need not also consider Question I. Basically, Question I simply presents the additional problem of whether there can ever be an effectively equal rate of taxation, as required by the Constitution, when property valuation is unequal.
Article VII, Section 4, of the 1968 Florida Constitution, F.S.A. provides:
"By general law regulations shall be prescribed which shall secure a just valuation of all property for ad valorem taxation, provided:
"(a) Agricultural land or land used exclusively for non-commercial recreational purposes may be classified by general law and assessed solely on the basis of character or use.
"(b) Pursuant to general law tangible personal property held for sale as stock in trade and livestock may be valued for taxation at a specified percentage of its value." (Emphasis supplied.)
This section is different from the prior "just valuation clause" contained in Article IX, Section 1 of the 1885 Florida Constitution, in that the two subsections were added by the 1968 constitutional revisers. Apparently the revisers felt that the four classes of property mentioned in these two subsections should be valued according to different standards than all other property. The rule expressio unius est exclusio alterius applies, however, so that by clear implication no separate standards for valuation may be established for any other classes of property.
Under the 1885 Constitution, we had held that the legislature could tax different classes of property on different bases, as long as the classification was reasonable. Lanier v. Overstreet, 175 So.2d 521 (Fla. 1965). The people of this State, however, by enumerating in their new Constitution which classifications they want, have removed from the legislature the power to make others.
It is true that the constitutional provision allows the Legislature to prescribe regulations for the purpose of securing a just valuation of all property, but such regulations must apply to all property and not to any one particular class. The regulations *435 contemplated by the Constitution are those which establish the criteria for valuing property; and all property  save those four classes specifically enumerated in the Constitution  must be measured under the same criteria.
The statute we are examining here is a classification for taxation purposes, which is impermissible under Article VII, Section 4, Florida Constitution. The statute classifies property based on the ownership thereof, a classification which we might have found to be in violation of the 1885 Constitution as well, as being unreasonable, arbitrary, and not related to any valid legislative purpose.
If the statute applied to all property and could be considered as merely establishing one criterion for determining value, it would still not survive because it is so unreasonable and arbitrary.
The effect of the statute is to give a subdivision developer a tax break by treating his unsold lots as unplatted for tax valuation purposes until he sells sixty per cent of his lots, while all of the purchasers of his lots are not so favored. The statute also discriminates between subdividers who have sold sixty per cent of their lots and those who haven't.
It is true that at some point in the development of most subdivisions the character of the land therein changes and the lots may increase in value, but the change is not dependent on who owns the lots. Indeed, in some subdivisions, such a change might not occur until long after all the lots have been sold by the developers. Any change in the value of lots in a subdivision can be measured by the same criteria used for other lands  the presence of roads, sewers, and telephone connections; im provements; the location; and many other factors, including those listed in Fla. Stat. § 193.011, F.S.A. Ownership in one party or another, however, would not be a valid criterion.
This Court has in the past pointed out the fundamental unfairness of statutorily manipulating assessment standards and criteria to favor certain taxpayers over others. See Walter v. Schuler, 176 So.2d 81 (Fla. 1965); Franks v. Davis, 145 So.2d 228 (Fla. 1962); and Schleman v. Connecticut General Life, 151 Fla. 96, 9 So.2d 197 (1942).
We find it impossible to consider Fla. Stat. § 195.062(1), F.S.A., as establishing a proper valuation criterion. The statute does no more than establish a classification of property to be valued on a different standard than all other property. Under the 1968 Constitution, Article VII, Section 4, this is no longer within the prerogative of the legislature to do.
Certified Question No. II is, therefore, answered in the affirmative. Questions I and III become irrelevant, and are not addressed. This cause is herewith remanded to the Circuit Court of Putnam County.
This decision operates prospectively from the date the opinion becomes final because persons relying on the state statute did so assuming it to be valid despite the new provisions of the 1968 State Constitution. Compare Gulesian v. Dade County School Board, Fla., 281 So.2d 325, opinion filed July 31, 1973, and City of Naples v. Conboy, 182 So.2d 412 at 417 et seq.
It is so ordered.
CARLTON, C.J., and ADKINS and McCAIN, JJ., concur.
BOYD, J., dissents with opinion.
DEKLE, J., dissents.
BOYD, Justice (dissenting):
I dissent.
It is a fundamental rule of law that there is a presumption in favor of the constitutionality of a legislative enactment: *436 the courts will presume in favor of the constitutionality of a statute and will be inclined to a construction favorable to its validity. Scarborough v. Webb's Cut Rate Drug Co.[1]
When a tract of real estate is platted, subdivided, and improved with an eye to selling it as individual lots, it begins, obviously, as one large parcel of land, and eventually becomes many small parcels of land. At some point during this process, for tax assessment purposes, the land changes its character. The legislature has decreed that the point at which this occurs is when less than forty percent of the original holding remains in the hands of the subdivider. In City of Naples v. Conboy,[2] this Court affirmed a lower court decision which held that the City of Naples was without the power to bind itself, by contract, to a tax limitation which appears identical to that of the statute in question, Section 195.062. We cited from City of Tampa v. Kaunitz:[3]
"Without valid legislative authority, no city or town has power to bind itself, by contract, either to forbear to impose taxes on particular property, or to impose them only under given limitations, or on certain given conditions."[4]
There can be no question that the legislature has the power within constitutional limits, to impose taxes "under given limitations." One such limitation is the process of classification. As we held in Lanier v. Overstreet:[5]
"... . The organic requirements of Section 1 of Article IX [now substantially sections 2 and 4 of Article VII, Constitution of 1968] do not forbid the classification of property in providing for the just valuation of taxable property; on the contrary, the organic mandate to the Legislature to `prescribe such regulations as shall secure a just valuation of all property' contemplates such classifications...."[6]
The essential question is thus whether the exercise of the legislative power in Section 195.062 was constitutionally within the mandate of Article 7, Sections 2 and 4.
In State ex rel. Conboy v. Colding,[7] the Court upheld the application of Section 192.31(2), Florida Statutes, 1967, the predecessor of Section 195.062,[8] without discussing the constitutionality of the act. Obviously, however, the Court did not consider it constitutional:
"... . It appears that the tax assessor applied the statutory classification and requirements of Section 192.31(2), Fla.Stats., F.S.A., in placing a value on unsold platted lots on the same basis as acreage of similar character. To have done otherwise would have been contrary to Section 192.31(2) Fla.Stats., F.S.A., and mandamus will not be granted to compel the performance of an illegal act... ."[9]
The constitutionality of Section 192.31(2), Florida Statutes, 1967, was put directly to the Circuit Court of Collier County in Conboy v. Tax Assessor;[10] however, the Court found it unnecessary to decide the question in settling the case, although *437 it indicated that it viewed plaintiff's contentions as being "without merit".[11]
The principal case touching upon the constitutionality of Section 192.31(2) is Lanier v. Overstreet, supra. In Lanier, this Court was squarely presented with the constitutionality of Section 193.11(3), Florida Statutes, 1963. In a statement which applies with equal force to Section 192.31(2), this Court concluded that the statute was constitutional and that:
"... . [T]he legislative directives in this field appear to have been designated to make sure that, in doubtful areas, the assessment will be made on the basis of the actual use to which the property is designed to be put during the particular tax year. ...."[12]
We then stated:
"Another legislative directive providing a practical guide to tax assessors to assure that the land will be assessed in accordance with its actual character during the tax year is found in Section 192.31(2), Fla.Stats., F.S.A., requiring platted lands to be assessed on the same basis as unplatted lands until 60 per cent of the lands in one plat have been sold as individual lots."[13]
By implication, at least, we have thus upheld the constitutionality of the relevant statute. Our reasoning was as follows: "uniformity," refers to rate of taxation; the legislature is required to classify, and has done so in this provision. Accordingly, there is no conflict between constitution and legislative enactment:
"It is settled that the `uniformity' requirement of this provision (Article IX, Section 1) is applicable to the rate of taxation only and not to legislative regulations to secure a `just valuation' of property. See Rorick v. Reconstruction Finance Corp., 144 Fla. 539, 198 So. 494 (1940); Schleman v. Connecticut General Life Insurance Co., 151 Fla. 96, 9 So.2d 197 (1942)... ."[14]
"... . As in the case of other legislative classifications, if a legislative directive designed to secure a just valuation of a particular class of property is reasonable, not arbitrary or unjustly discriminatory, and applicable alike to all similarly situated, it should be upheld by the courts. State v. City of Miami, 103 Fla. 54, 137 So. 261, 265 (1931).... ."[15]
Finally, this Court replied to the contention that an unconstitutional "partial exemption" was being created:
"... . [T]here is nothing in the legislative regulations, respecting the `just valuation' of taxable property to authorize the assessment of property in accordance with a potential use which might be made of the property at some future time. .. ."[16]
In the case of Section 195.062, the Legislature has determined that the character of the land does not change until sixty percent has been sold as individual lots. This is both reasonable since, as previously pointed out, the character change must occur at some point, and conceivably in line with a valid legislative purpose, that is, encouragement for the development of land.
Applying the foregoing discussion to the specific questions presented in this case, then, it is obvious that there is no conflict between Article VII, Section 2, Constitution *438 of the State of Florida, and Section 195.062. They are quite clearly directed to different ends, and simply bear no direct relation to each other. Thus, the answer to Question One should be "no".
Article VII, Section 4, and Section 195.062 do relate to each other, but that relationship, as examined by the Courts of this state, is a constitutional one. Thus, the answer to Question Two should be "no".
With respect to the third question, Section 193.011, Florida Statutes, 1971, provides a list of factors to be considered in arriving at a just valuation, as required under Article VII, Section 4:
"(1) The present cash value of the property.
"(2) The highest and best use to which the property can be expected to be put in the immediate future and the present use of the property.
"(3) The location of said property.
"(4) The quantity or size of said property.
"(5) The cost of said property and the present replacement value of any improvements thereon.
"(6) The condition of said property.
"(7) The income from said property; and
"(8) The net proceeds of the sale of the property, as received by the seller, after deduction of all of the usual and reasonable fees and costs of the sale, including the costs and expenses of financing."
The factors proposed for consideration by the Third question are sufficiently analogous to these to be valid as applied to the platted but unsold lots. Thus, the answer to Question Three should be "yes".
Accordingly, I must dissent to the majority opinion.
DEKLE, J., concurs.

ON PETITION FOR REHEARING
On consideration of the petition for rehearing filed by attorneys for plaintiffs, oral argument on rehearing, and after further consideration by the Court, the opinion filed in this cause on September 12, 1973 is adhered to.
It is so ordered.
ADKINS, C.J., and ERVIN, McCAIN and OVERTON, JJ., concur.
BOYD and DEKLE, JJ., dissent.
NOTES
[1] 150 Fla. 754, 8 So.2d 913 (1942). See also Smetal Corp. v. West Lake Investment Co., 126 Fla. 595, 172 So. 58 (1937).
[2] 182 So.2d 412 (Fla. 1965).
[3] 39 Fla. 683, 23 So. 416 (1898).
[4] 23 So. at 420. (Emphasis supplied.)
[5] 175 So.2d 521 (Fla. 1965).
[6] Id. at 523.
[7] 200 So.2d 246 (Fla.App.2d 1967).
[8] Section 192.31, Florida Statutes, 1967, provided, in part: "... . [P]latted lands unsold as loss shall be valued for tax assessment purposes on the same basis as any unplatted acreage of similar character, until sixty percent of such lands included in one plat shall have been sold as individual lots... ."
[9] 200 So.2d at 248. (Citation omitted.)
[10] 31 Fla. Supp. 12 (Collier Co.Cir.Ct. 1968).
[11] Id. at 18.
[12] 175 So.2d at 524.
[13] Id.
[14] Id. at 523. The separation of these two concepts has become even more apparent with the adoption of the 1968 Constitution, which placed the phrases "uniform rate" and "just valuation of property" in separate sections (Sections 2 and 4 of Article 7, respectively).
[15] Id. (Other citations omitted.)
[16] Id.